UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Mining & Manufacturing Company,

          Plaintiff,

v.

                                        MEMORANDUM OPINION
                                        And ORDER
                                        Civil No. 98-2134 (MJD/JGL)

Shurtape Technologies, Inc. and
Manco, Inc.,

          Defendants.

---

     Louis T. Pirkey, William G. Barber, Mark A. Thurmon, and Timothy M. Kenny, Fulbright & Jaworski L.L.P. and Thomas W. Tinkham, Dorsey & Whitney LLP for and on behalf of Plaintiff.

     Michael T. Nilan and David T. Schultz, Halleland Lewis Nilan Sipkins & Johnson, P.A. and Thomas E. Young, Vickers, Daniels & Young, for and on behalf of Defendant Manco, Inc.

     Lindsay G. Arthur, Jr., and Thomas A. Forker, Arthur, Chapman, Kettering, Smetak & Pikala, P.A. for and on behalf of Defendant Shurtape Technologies, Inc.

---

     The parties in this case manufacture and/or sell blue masking tape products used by painters.  3M has brought claims of trademark infringement, unfair competition and trademark dilution against Defendants Shurtape Technologies, Inc. ("Shurtape") and Manco, Inc. ("Manco").[1]  Earlier in this litigation, prior to the close of discovery, Shurtape had moved the Court for summary judgment as to all of 3M's claims.  That

---

[1] Manco is a customer of Shurtape and distributes a tape manufactured by Shurtape under its own private label brand.

1

MAY 1 7 2001
FILED_____
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

motion was denied based on this Court's finding that genuine issues of material facts existed.  Now that discovery is closed, Manco has brought a motion for summary judgment, to which Shurtape has joined, asserting arguments previously asserted in Shurtape's motion for summary judgment, as well as additional arguments.  Also before the Court are 3M's motions for partial summary judgment on the issues of fraud and functionality, and 3M's motion to strike the expert testimony of William J. O'Connor.

## BACKGROUND

In 1987, 3M began test marketing a blue, premium grade, UV-resistant masking tape. Manco Ex. 4.  At that time, there was no other masking tape like it on the market. This tape was beneficial in painting applications because it could be left in place for up to seven days without suffering damage from ultra-violet light, and could thus be easily removed.  3M introduced its new tape nationally in August 1988.  Ex. 5.   3M asserts that it decided to sell its new tape in the color blue so that it would be easily distinguished from other tapes on the market.

In 1989, 3M became aware that Shurtape had developed a competing product to its blue painter's tape, known as CP-26.  Ex. 137.  The CP-26 product was dark blue in color, and provided three days UV-resistance.  Kenny Decl. Ex. B at Nos. 24 and 40.  By contrast, 3M's tape was a lighter shade of blue and provided seven days UV-resistance. Heil Decl. ¶ 7.  In 1990, American and Anchor Continental also began to sell a blue painter's tape.  Exs. 49 and 50.  Manco then began selling a blue tape in March 1991.  Ex. 71. In all, ten companies began selling a blue painter's tape between 1990 and 1997. Exs. 50, 53; Burger Aff. Rule 1006 Chart.  In 1998, Shurtape began to sell a new version of its

2

blue tape, known as CP-27, which more closely matched the color of 3M's tape and which also provided seven days UV-resistance.  Olson Decl. Ex. O; Kenny Decl. Ex. B at Nos. 2, 24 and 41.

3M filed an application to register the color Blue Mark for its premium grade, UV-resistant painters' tape in August 1997. Ex. 64.  On July 28, 1998, the United States Patent and Trademark Office ("USPTO") issued to 3M U.S. Trademark Registration No. 2,176,916, for the mark consisting of "blue as applied to the entirety of the goods." Kenny Decl. Ex. M.  This action was then filed on September 22, 1998.

Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992).  To determine whether genuine issues of material fact exist, the court determines materiality from the substantive law governing the claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material.  Id.  A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party.  Id. at 248-49.

Trademark Validity

Manco seeks to defend against 3M's claims by asserting that 3M obtained registration for the color Blue Mark for painter's tape by filing a false and deceptive

3

trademark application.  Manco alternatively argues that 3M's trademark should be canceled, because  the color Blue Mark for painter's tape is functional, and generic and that 3M has not established that the color blue has developed secondary meaning.

    1. Fraud

    A petition to cancel a registration may be made at any time if the registered mark was obtained by fraud. 15 U.S.C.  § 1064(3).  "Fraud in procuring a . . .  mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application." L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999)(quoting Metro Traffic Control, Inc. v. Shadow Network, Inc., 104 F.3d 336, 340 (Fed. Cir. 1997)).  A claim of fraudulent procurement has two elements: false, material misrepresentations of fact; and that such statements were knowingly made with the intent to deceive.  Id. at 1352.  "[The] party seeking cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence."  Id. at 1351.

    Manco argues that 3M's trademark registration for the color blue should be canceled because in its application filed in August 1997, 3M stated that it had "substantially exclusive" use of the color blue for UV-resistant tapes since its inception. Manco Ex. 64.  Manco asserts that 3M did not have substantially exclusive use of the color blue for painter's tape during the relevant time period, and has produced marketing and sales data to show that competitors had an approximate 20% market share.  Manco further argues that because 3M had knowledge of the extent of its competitors sales, 3M knew or should have known that the limited information

4

presented to the USPTO would be misleading.

3M responds that Manco has misinterpreted the data that it has submitted, and has submitted a different set of data to support its assertion that it had substantially exclusive use of the color Blue Mark. 3M also asserts that its statements to the USPTO were not false or misleading because such statements were made in good faith. 3M points to a market estimate prepared by a 3M employee, which provides that 3M had a 92% market share of blue painter's tapes and a 78% share among all UV-resistant tapes. Jonson Decl. ¶ 7, Ex. C. 3M further asserts that although it was aware that other manufacturers were selling a blue UV-resistant tape, 3M had no knowledge or reason to believe that these junior users had a clearly established legal right to use that color on its tapes. Therefore, 3M was under no obligation to inform the USPTO of the other uses by competitors.

In determining whether 3M made false or misleading statements in its application materials, the Court initially notes that use of the mark by other companies does not preclude an applicant's declaration of "substantially exclusive use." Kichler, 192 F.3d at 1352. "The five years of use does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim." Id. (citing Trademark Manual of Examining Procedure, § 1212.05(b)).

This Court further rejects Manco's argument that to prove its fraud claim, it need only show that 3M knew or should have known that its statements were misleading is not a correct recitation of the law. To prove fraudulent intent, Manco must show that

3M had an intent to deceive the USPTO.  See, Kichler, 192 F.3d at 1352.  Because the oath required by a trademark applicant is phrased in terms of a subjective belief, it is a defense to a claim of fraudulent procurement that the affiant had a an honestly held, good faith belief that the statements in the oath were true..  Resorts of Pinehurst, Inc. v. Pinehurst National Corporation, 148 F.3d 417, 420 (4th Cir. 1998)(citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition  § 31:76, p. 31-116 to 117 (4th ed. 1998)).  See also, Marshak v. Treadwell, 240 F.3d 184, 195 (3rd Cir. 2001)(finding district court's instruction that fraudulent procurement may be proven if registrant 'knew or should have known' of misrepresentation was error).

Based on the above standards, the Court finds that genuine issues of material fact preclude the Court from entering summary judgment on the issue of fraudulent procurement.  There is conflicting evidence as to the extent of the competitors' share of the market during the relevant time period.  There are also genuine issues regarding 3M's subjective good faith belief that its statements to the USPTO were accurate.

2.  Functionality

3M moves for partial summary judgment on the issue of whether the color Blue Mark is functional with respect to its professional-grade, UV-resistant masking tape.  If the color Blue Mark is determined to be a functional feature of the masking tape at issue, then 3M will not be entitled to claim trademark protection for such mark.

The doctrine of functionality "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature."  Qualitex v.

6

Jacobsen Products Co., Inc., 514 U.S. 159, 164 (1995). "[A] product feature is functional,'

and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if

it affects the costs or quality of the article,' that is if exclusive use of the feature would put

competitors at a significant non-reputation-related disadvantage." Id. (citing Inwood

Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851, n. 11 (1982)).

Functionality is a question of fact, that must be determined in light of the totality of

circumstances. Brunswick Corporation v. British Seagull Limited, 35 F.3d 1527, 1530

(Fed. Cir. 1994).

　　　The Supreme Court has held that color alone may meet the basic legal

requirements for use as a trademark, by acting as a symbol that distinguishes a firm's

goods and identifies their source, without serving any other significant function. Qualitex

at 165. "The upshot is that, where a color serves a significant nontrademark function . . .

courts will examine whether its use as a mark would permit one competitor (or a group)

to interfere with legitimate (nontrademark related) competition through actual or

potential exclusive use of an important product ingredient." Id. at 170. The Court went

on to uphold the findings and conclusions of the district court that Qualitex was entitled

to trademark protection for the color of its pads because the color had developed

secondary meaning and served no other function. Id. at 166 and 174(finding that while

some color was needed to avoid the appearance of stains, there was no competitive need

to use Qualitex's green-gold color).

　　　Following the Court's decision in Qualitex, the Second Circuit Court of Appeals

addressed the issue of whether a color code that had useful qualities was entitled to

trademark protection.  Fabrication Enterprises, Inc. v. Hygenic Corporation, 64 F.3d 53

(2nd Cir. 1995).  Based on the Court's opinion in Qualitex, the Second Circuit held that

the proper inquiry is whether the color code would impose costs to competition that are

too high.  Id. at 58.

An example of how color does, at times, serve a utilitarian purpose that affects

competition is found in Brunswick, supra.  In that case, the court held that a boat motor

manufacturer could not register the color black as a trademark, because black supplied a

competitive advantage in two ways, it was more compatible to many colors, and it had

the ability to decrease the apparent motor size.  Id. 35 F.3d at 1533.  See also, Deere &

Co. v. Farmland, Inc., 560 F. Supp. 85 (S.D. Iowa 1982) aff'd, 721 F.2d 253 (8th Cir.

1983)(farm machinery manufacturer not entitled to trademark protection for color green

because customers want their farm machinery to match).

In this case, 3M begins with the benefit of a presumption that its mark is distinctive

and nonfunctional, given the fact that the mark has been approved for registration.  See,

Aromatique, Inc. v Gold Seal, Inc., 28 F.3d 863, 869 (8th Cir. 1994).   To succeed on the

issue of functionality, Defendants must present evidence to rebut this presumption.

Defendants attempt to meet this task by asserting that the color blue for professional-

grade, UV-resistant masking tape serves three functions: it identifies the type of masking

tape, it is conspicuous and it enhances the UV-resistance of the tape.

3M argues that the evidence presented by Defendants does not rebut the

presumption that the color blue is functional.  It argues that blue is not a necessary

feature for its professional-grade, UV resistant masking tape, as illustrated by the fact that

other colors are available, and that Defendants and other competitors currently produce a professional-grade, UV resistant tape in colors other than blue.  3M also argues that blue does not affect the UV resistance of the tape.  As an example, 3M cites to the fact that Shurtape has two tapes, the CP-26 and the CP-27.  Both are shades of blue, but claim different UV-resistance.  3M argues that this example clearly shows that UV-resistance is not dependent on the color of tape, rather it is dependent on the adhesive used.

3M further argues Defendants' argument with respect to a color coding system is wrong on the facts and the law.  Although blue is part of 3M's color coding system, there is no evidence that an industry-wide color coding system exists.  Further, 3M correctly asserts that the fact that a color code may be functional is not the end of the inquiry.  Inquiry must be made into the affects of protecting a color or color code on competition.  Fabrication Enterprises, 64 F.3d at 58.

The parties have submitted a significant amount of evidence in support of their respective positions as to whether the color blue is functional.  After carefully reviewing this evidence, however, the Court finds that material issues of fact exist as to how and to what extent the color blue affects competition.  Accordingly, summary judgment as to this issue is not appropriate.

3.  Generic

Manco also argues that it is entitled to summary judgment because the color blue is generic.  In determining whether a trademark is entitled to protection, it must first be classified into one of four categories: 1) arbitrary or fanciful; 2) suggestive; 3) descriptive;

9

and 4) generic. Insty*Bit, Inc. v. Poly-Tech Industries, Inc., 95 F.3d 663, 672 (8th Cir.

1996).  Categorization of a mark is a factual determination involving the examination of

two factors - the distinctiveness of the mark and the extent to which the mark is

recognized by the relevant consuming market. Woodroast Systems v. Restaurants

Unlimited, 793 F.Supp. 906, 911 (D.Minn. 1992)(citations omitted).  "An arbitrary,

fanciful or suggestive mark is deemed inherently distinctive, and therefore entitled to

protection, because its intrinsic nature serves to identify a particular source of a product."

Insty*Bit, 95 F.3d at 673.  Generic terms are not protected by the Lanham Act, "because

it is merely used by the general public to identify a category of goods." Id.  There are

several factors that courts may consider when determining whether a mark is generic,

including, competitor's use, plaintiff's use, dictionary definitions, media usage, testimony

from persons in the trade, and consumer surveys. Ty, Inc. v. Jones Group, Inc., 98 F.

Supp.2d 988, 994 (N.D. Ill. 2000)(citing 2 J. Thomas McCarthy, McCarthy on

Trademarks and Unfair Competition § 12:13 (4th ed. 1997)).

Manco argues that the blue mark on painter's tape is generic because the mark's

primary significance is identifying the product, rather than the source.  To support this

argument, Manco points to the evidence of use by competitors and cites to numerous

articles in trade magazines and the like in which painter's tape is described as blue tape.

3M, on the other hand, has presented evidence of consumer confusion, and a consumer

survey to show that blue is distinctive and that competitor's use of similar shades of blue

will cause confusion.  3M also has presented evidence to show that its significant market

share and its advertising and promotion are further evidence that the blue mark is

distinctive.   Given this conflicting evidence, the Court finds that summary judgment on the generic issue is not appropriate.

4. Secondary Meaning

Manco also argues that it is entitled to summary judgment as to all of 3M's claim, because 3M cannot establish that the blue mark on painter's tape has established secondary meaning.  For the same reasons noted above, the Court finds that summary judgment is precluded on the issue of secondary meaning.

5. Laches

Finally, Manco argues that it is entitled to summary judgment on the basis of laches.  Laches is an equitable defense to an action to enforce a trademark.  Hubbard Feeds v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999). "Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." Id. at 602.  To prevail on its laches defense, Manco must demonstrate by a preponderance of the evidence that (1) 3M inexcusably delayed in asserting its trademark; and (2) Manco suffered undue prejudice because of that delay. Id.; See also, Azalea Fleet v. Dreyfus Supply & Mach. Corp., 782 F.2d 1455, 1458 (8th Cir.1986) (stating that the burden of proving laches rests on the party opposing the trademark claim).  Because laches is an equitable defense, the doctrine is flexible.  Citizens and Landowners Against the Miles City/New Underwood Powerline v. Secretary, U.S. Dept. of Energy, 683 F.2d 1171, 1174 (8th Cir. 1982).  No fixed or arbitrary period of time controls its applicability.  Id. (citing Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 805-806 (8th Cir. 1979)).  In determining whether the

11

doctrine of laches should bar a lawsuit, all the particular circumstances of each case must be considered, including the length of delay, the reasons for it, its effect on the defendant, and the overall fairness of permitting the plaintiff to assert his or her action. Id.

Manco argues that 3M knew that competitors were offering a competitive blue painter's tape as early as 1989, but that it waited until 1998 to bring this lawsuit. Manco argues that 3M's delay in bringing this litigation is inexcusable, and that it will suffer prejudice.

A.  Inexcusable Delay

Manco argues that 3M's delay is inexcusable for several reasons. There is no dispute that 3M has known since 1989 that competitors were using the color blue for their painter's tapes, and in one of its responses to Defendants' discovery requests, 3M provided information that discussions concerning registering and enforcing the blue trademark took place as early as 1989. Manco Ex. 127.  Rather than taking that action, 3M instead sought to obtain an exclusive arrangement with manufacturer of the blue crepe paper used for its tapes to ensure that no others would be able to produce the same color as 3M.  Ex. 6, 7 and 8.  Manco further asks that this Court reject the argument put forth by 3M - that it did not believe it had an enforceable right to seek registration of the color blue until after the Supreme Court's decision in Qualitex, supra. This same "explanation" for its delay in bringing suit was submitted in another district court case in this district, and was rejected.  Beautone, 82 F.Supp. 2d at 1004.

In response, 3M argues that prior to 1998, defendants sold a UV-resistant tape that was a much darker blue, and which used a rubber-based adhesive for which the defendants claimed only 3days of UV- resistance.  But in 1998, defendants changed their tape to a color that more closely matched  the color of 3M's tape, and switched to an acrylic adhesive which provided seven days UV- resistance, similar to 3M's tape.  3M refers to this conduct as progressive encroachment, which, if applicable, would excuse 3M's delay.  See Kason Industries v. Component Hardware Group, Inc., 120 F.3d 1199, 1205 (11th Cir., 1997)(delay should be measured from time at which plaintiff knows or should know it has a provable claim); Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F. Supp. 994, 1014 (D. Mass. 1988)(court found no delay when litigation filed one month after discovering consumer confusion has dramatically risen); Miss Universe, Inc. v. Patricelli, 271 F. Supp. 104, 110 (D. Conn. 1967)(laches inapposite where evidence shows a slow encroachment, of increasingly direct competition and of sudden promotional expansion).  Under the progressive encroachment doctrine, "where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." Kason, 120 F.3d at 1205.

3M has provided the Court evidence to substantiate its claim that in 1998, Shurtape began to manufacture a tape, the color of which more closely matched the shade of 3M's tape, and which lengthened the UV-resistance to seven days by using an acrylic adhesive.  Olson Decl. Ex. O; Kenny Decl. Ex. B at Nos. 2, 24 and 41.  The evidence also shows that after Shurtape changed its tape in 1998, Its sales rose

13

dramatically.  Olson Decl. Ex. Q.  Because the basis of 3M's claims in this case is the new

tape developed by Shurtape in 1998, the Court finds that pursuant to the doctrine of

progressive encroachment, 3M did not delay in bringing this suit.

   B.  Prejudice

   Manco further argues that it will be prejudiced economically.  Because Manco

began selling a blue painter's tape in 1991, it has exposed itself to substantial legal liability

in the form of treble damages and loss of profits that it would have not faced if it used

another color for its tape.  3M's claims do not address Manco's sales prior to 1998

however, thus its claim of economic prejudice is not accurate.

   Manco also argues that it will suffer evidentiary prejudice as a result of 3M's delay

in bringing suit.  For example, Manco states that 3M can provide no details regarding the

dates and extent of advertising, and that some witnesses have disappeared.  3M

responds, however, that it has witnesses that will testify about sales and promotions.

Based on the Court's review of the record, the Court finds that Manco's assertion of

evidentiary prejudice is not well-founded.

   Accordingly, the Court finds that 3M is not barred from bringing suit on the basis

of laches.

   6.  Acquiescence/Estoppel

   An estoppel can be created by a plaintiff's knowing acquiescence in a defendant's

activities.  See 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,

§ 32.105 (4th ed.1996).  Generally, an infringement action may be barred by the doctrine

of estoppel by acquiescence where the owner of the trademark, by conveying to the

defendant through affirmative word or deed, expressly or impliedly consents to the infringement.  See 5 McCarthy § 31.14; see also Jaycees, 794 F.2d at 381-82.  Reliance on the consent or acquiescence of the trademark owner can create an estoppel which will preclude an effective termination of the consent.  See 5 McCarthy § 31.42.  The basic elements of estoppel are (1) knowledge of the facts giving rise to the particular claim; (2) reliance on the misleading conduct or false representations of the party to be estopped; and (3) change in position based thereon to his injury, detriment or prejudice.  See Hiland Potato Chip Co. v. Culbro Snack Foods, Inc., 720 F.2d 981, 984 (8th Cir. 1983).

Manco argues that 3M should be barred from bringing this trademark action because 3M's conduct rose to the level of acquiescence - that during the years in which competitors sold blue tape prior to 3M obtaining its trademark registration, 3M never claimed an exclusive right to the color blue or objected to the competitor's use of blue on its painter's tape.  Further, 3M did not object when others registered trademarks for competitive products, such as SolaBlue®, ProMask Blue® or Clean Release®.  Rather, Manco argues that 3M disclaimed the right to exclusive use of the color in a previous trademark application, and 3M also engaged in costly and extensive product testing.

Manco cannot rely on internal testing to support its acquiescence argument, because Manco has presented no evidence that it knew of this testing, and relied on it as a result.  Nor can it rely on the fact that 3M disclaimed the color blue in a prior application for trademark registration for the mark "Premium Blue" because Manco cannot show that it was aware of such disclaimer and relied on it.

15

The Court also rejects Manco's argument that 3M's silence as to its competitor's use of blue prior to obtaining the trademark registration on such mark, and its failure to object to applications for word marks, constitutes acquiescence.  Given the fact that 3M's has limited its claim to the 1998 tape, 3M did not consent to such use as this action was filed shortly after the new tape's introduction to the market.  Further, 3M's failure to object to a word mark has no relevance to the issue of consent to use a color mark - which would be akin to comparing apples and oranges.

Finally, the Court finds that there is insufficient evidence in the record to support Manco's estoppel claim.   To prevail on an estoppel claim, Manco must show that it was mislead by 3M, and that it relied upon 3M's misleading conduct.  Beautone, 82 F.Supp. 2d at 1005 (citation omitted).  Misleading conduct may include silence or inaction, combined with other facts surrounding the parties' relationship or other contacts between the parties that would support an inference that the claim against the alleged infringer had been abandoned.  Id.  Other than 3M's failure to affirmatively object to the use of blue in competing painter's tapes, Manco has not put forth other evidence regarding the parties' relationship or the parties' contacts that would support an inference that 3M was abandoning its claim.  Accordingly, Manco's motion on the issue of estoppel must also fail.

7.  Dilution Claims

In its Complaint, 3M asserts that defendants' use of 3M's color Blue Mark on their tapes causes dilution of the distinctive quality of 3M's mark, and that such conduct was done for the purpose of willfully trading on 3M's goodwill and reputation and to cause

dilution of 3M's famous color Blue Mark, in violation of 25 U.S.C. § 1125(c) and Minn. Stat. §325D.165. To prevail on the dilution claims, 3M must demonstrate that its color Blue Mark is famous; that it is truly prominent and renowned. Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). As genuine issues of fact exist as to the distinctiveness of 3M's mark, and whether it has obtained secondary meaning, the Court must also find that genuine issues exist as to whether the color Blue Mark is famous for purposes of 3M's trademark dilution claim.

    8. Motion to Strike

    3M has moved the Court to strike the expert testimony of William J. O'Connor. Mr. O'Connor has been retained by Manco to conduct a consumer survey. 3M argues that Mr. O'Connor's survey should be stricken as it is irrelevant and unreliable. 3M argues that the operative question on the survey was "Besides color, is there a difference between masking tape that comes in blue and masking tape that is [another color?] In response to this question, participants stated that "Blue is a quick release. White is good for plastic. . . " "Blue costs more. . . ""There is a price difference. . . " 3M argues that the responses to this question shows that the question is ambiguous with regard to secondary meaning. Manco responds, however, that the question establishes that because respondents did not discuss blue as a source identifier, it establishes that the color Blue Mark has not obtained secondary meaning.

    3M further argues that the results are unreliable, because 15% (44 of 325)of the original interviews were thrown out because interviewers fabricated results. The fabrication was detected when another company attempted to validate the results. The

44 responses were thrown out, and new interviews taken place.   3M argues that the replacement interviews produced significantly different results.   Manco responds that Mr. O'Connor ran a Z-Test, Difference Between Proportions and found that there was no statistically significant difference between any reported findings in the two sets of data.

The Court finds that Manco has sufficiently established that Mr. O'Connor's testimony is both relevant and reliable, and may be presented to the finder of fact.

IT IS HEREBY ORDERED that:

1.   3M's Motions for Partial Summary Judgment as to Fraud and NonFunctionality are DENIED.

2.   Manco's Motion for Summary Judgment is DENIED.

3.   3M's Motion to Strike the Expert Testimony of William J. O'Connor is DENIED.

Date: *May 17, 2001*

*Michael J. Davis*
Michael J. Davis
United States District Court